IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| INTELLICAD TECHNOLOGY CONSORTIUM, ) | |
| ) | |
|     Judgment Creditor, ) | |
| ) | |
| v. ) | Civil Action No. 1:20-mc-13 (RDA/IDD) |
| ) | |
| ) | |
| SUZHOU GSTAROFT, CO., LTD., ) | |
| ) | |
|     Judgment Debtor. ) | |

**<u>ORDER</u>**

This matter comes before the Court on IntelliCAD Technology Consortium's ("IntelliCAD") Motion for a Writ of Execution ("Motion") (Dkt. 3). Considering the Motion, the IntelliCAD's Memorandum of Law in Support of the Motion (Dkt. 4), Suzhou Gstaroft, Co., Ltd.'s ("Gstar") Opposition to the Motion ("Opposition") (Dkt. 11), and IntelliCAD's Reply in Support ("Reply") (Dkt. 12), it is hereby ORDERED that IntelliCAD's Motion for Writ of Execution is DENIED.

I.  BACKGROUND

Gstar is a Chinese company that provides 2D and 3D computer-aided design software for various industries. Dkt. 11, 2. IntelliCAD obtained a judgment against Gstar in the United States District Court for the District of Oregon. Dkt. 1. IntelliCAD maintains that it has been unable to execute this judgment because Gstar is a Chinese company with no known assets in the United States. Dkt. 4, 1. Gstar, however, appears to have two registered domain names with VeriSign Inc. – Gstarcad.com and Gstarcad.org. Dkt. 11, 2. VeriSign Inc. is domain name registry provider that is based within this district. Dkt. 4, 4.

On June 9, 2020, IntelliCAD filed the now-pending Motion wherein IntelliCAD seeks to enforce the judgment granted in its favor in the District of Oregon. Dkt. 3. IntelliCAD asks this Court to order a transfer of the domain names from VeriSign to a third party and authorize the sale of the same. *Id*.

## II.   STANDARD OF REVIEW

Typically, a money judgment "is enforced by a writ of execution." Fed. R. Civ. P. 69(a)(1). The procedures for a writ of execution "must accord with the procedures of the state where the court is located." *Id.* Thus, this Court looks to Virginia law to discern the protocols for enforcement of a writ of execution. As the United States Court of Appeals for the Fourth Circuit has explained, "in the Eastern District of Virginia … Virginia's practice and procedure is borrowed by federal rule for the purpose of enforcing the judgment through a writ of execution." *United States v. Harkins Builders, Inc.*, 45 F.3d 830, 833 (4th Cir. 1995). And this Court has previously looked to Virginia law in determining whether to issue a writ of execution as to domain names. *See e.g. Dorer v. Arel*, 60 F. Supp. 2d 558, 559 (E.D. Va. 1999).

In Virginia, a judgment creditor, such as IntelliCAD, may file a motion for a writ of *fieri facias* (writ of execution), which, if granted, orders an appropriate officer to satisfy the judgment by selling the judgment debtor's (here, Gstar's) personal property. Va. Code Ann. §§ 8.01-466, 8.01-501. Upon granting the writ, the officer seizes the property, sells the property, and distributes the proceeds from the sale to the judgment creditor to satisfy the judgment. Va. Code Ann. §§ 8.01-474, 8.01-478. This process applies to both tangible and intangible property. *Network Sols., Inc. v. Umbro Intern., Inc.*, 259 Va. 759, 768 (2000) ("When property of a judgment debtor is … intangible … such property is nevertheless subject to the execution lien . . . ."); *see also* Va. Code Ann. § 8.01-501; *Dorer*, 60 F. Supp. 2d at 559. Thus, the writ of *fieri facias* is "a lien from the

time it is delivered to [an officer] … to be executed, on all the personal estate of … the debtor." Va. Code Ann. § 8.01-501.

However, when a third party controls the property, the process is not quite as simple. It is true that "a lien is created on the property held by a third party debtor on the date the writ of *fieri facias* is delivered to the officer . . . ." *PS Bus. Parks, L.P. v. Deutsch & Gilden, Inc.*, 287 Va. 410, 419 (2014) (citing *In re Lamm*, 47 B.R. 364, 368 (E.D. Va. 1984)). However, the lien is "not enforceable against a third party" until "a garnishment summons is issued and served on the third party." *Id.*; *see also* Va. Code Ann. § 8.01-511. And this third party must be someone who is either "indebted to the judgment debtor or … have possession of property of such debtor." *Lynch v. Johnson*, 196 Va. 516, 520 (1954). Therefore, in Virginia, when property belonging to a debtor is held by a third-party, a lien is created on that property by a writ of *fieri facias*, but such a lien is not enforceable unless a garnishment summons is issued. *See Harkins Builders*, 45 F.3d at 833 ("And when the property is in the hands of a third person, the lien of execution may be enforced through a garnishment proceeding.").

### III.  ANALYSIS

The issue before the Court is whether this Court may order the transfer and sale of domain names belonging to Gstar. Under Virginia law, the answer is clearly no. *See Network Sols.*, 259 Va. at 761. In *Network Sols., Inc. v. Umbro Intern., Inc.*, 259 Va. 759, 761 (Va. 2000), the Supreme Court of Virginia held that domain names are "not subject to garnishment." The court advanced two rationales. First, the court reasoned that a domain name is "the product of a contract for services between the registrar and registrant." *Id.* at 770 (quoting *Dorer*, 60 F. Supp. 2d at 561). That court further reasoned that a contract for services is not subject to garnishment because it is not "a liability" as the term is used in § 8.01-511. *Network Sols.*, 259 Va. at 770. Second, the

3

Virginia Supreme Court explained that policy also supported its disposition. *Id*. at 771. The Virginia Supreme Court further opined that if it allowed garnishment of services that give the right to use a domain name, then "any service would be garnishable." *Id.* Thus, the court explained that if domain names can be garnished, then a debtor who prepaid the fee for a particular channel subscription can have that subscription service garnished. *Id.* And the court concluded that "[w]ithout statutory changes" it is "not willing to allow such results in Virginia." *Id.*

Nevertheless, IntelliCAD makes three arguments to the contrary. First, IntelliCAD tries to distinguish Network Sols. by limiting that case to the context of garnishment under Va. Code Ann. § 8.01-511. Dkt. 4, 3. Second, IntelliCAD argues that a domain name is intangible property that can be sold to enforce a judgment, similar to patents. Id. Third and finally, IntelliCAD argues that the controlling case here is SAS Institute, where the Fourth Circuit held that a district court can rely on the All Writs Act to fashion "extraordinary remedies" to ensure that its judgment is not "defenseless." Id. at 5-6 (citing SAS Inst. v. World Programming Ltd., 952 F.3d 513, 514 (4th Cir. 2020)). The Court considers each argument in turn.

### A. *Network Sols*. is not Limited to Garnishment

IntelliCAD draws a distinction between garnishment on the one hand and seizing and selling property on the other. Dkt. 4, 3. IntelliCAD argues that Network Sols. stands for the narrow proposition that domain names cannot be garnished. Id. But, in IntelliCAD's view, Network Sols. does permit the seizure and sale of domain names to satisfy a judgment. Id. This argument fails for two reasons.

First, this argument misconstrues the purpose of garnishment. Garnishment in Virginia is "the process by which a creditor enforces the lien of his execution against the effects of his debtor in the hands of the garnishee." Bickle v. Chrisman's Adm'x, 76 Va. 678, 691-92 (1882); Lynch

v. Johnson, 196 Va. 516, 520 (1954). Thus, when a writ of execution is issued and gives a judgment creditor a lien, if the property at issue is in the possession of "any person other than the judgment debtor," the property must be garnished from the third party. Va. Code Ann. § 8.01-511. Thus, limiting the scope of Network Sols. to garnishment, but not the seizure and sale of domain names, would be an incorrect reading of the Network Sols. decision. To hold otherwise, would mean that the IntelliCAD could bypass the garnishment requirement by executing a lien on domain names that are in the possession of a third party without following the proper garnishment procedures under § 8.01-511.

Furthermore, the Virginia Supreme Court has analogized garnishment to "attachment by levy" but differs in at least one respect, that being that "the creditor does not acquire a clear and full lien upon the specific property in the garnishee's possession." Lynch, 196 Va. at 520. Thus, garnishment provides a lesser property interest to the judgment creditor than the seizure and sale of that property by levy. Limiting the holding of Network Sols. to garnishment would mean that a judgment creditor would be able to reach a judgment debtor's domain names when seeking a greater interest in them (by seizing and selling them) than when seeking a lesser interest (garnishment). Because the Supreme Court of Virginia found that under Virginia law, service contracts are to be protected from garnishment, Network Sols., Inc., 259 Va. at 770, it logically follows that that court would have protected the same from being seized and sold. This is the rational conclusion because the seizure and sale of a service contract would give creditors an even greater interest in the service than if the service were merely garnished. Limiting Network Sols. to the garnishment context would frustrate the Supreme Court of Virginia's holding and would be inapposite to Virginia law.

Second, the argument that Network Sols. should be limited to the garnishment context has previously been rejected by this Court. *Alexandria Surveys Int'l LLC v. Alexandria Consulting Grp., LLC*, 500 B.R. 817, 822 (E.D. Va. 2013). In *Alexandria Surveys Int'l LLC*, this Court explained that "the garnishment context does not change the Network Sol[s.] court's holding that the use of a domain name is a 'contractual right' and does 'not exist separate and apart from [the provider]'s services . . . .'" Id. So too here.

For these reasons, Network Sols. is not limited to the garnishment context.

Accordingly, this Court finds that *Network Sols.* is controlling. Here, IntelliCAD seeks to have Gstar's domain names of sold to satisfy a judgment. Yet, under Virginia law, domain names cannot be sold to satisfy a judgment because they are a product of a contract for services. *Network Sols., Inc.*, 259 Va. at 770. The Supreme Court of Virginia has already held that domain names are not subject to garnishment. And, this Court must apply Virginia law in determining whether to issue the writ of execution. Fed. R. Civ. P. 69(a)(1). Therefore, this Court finds that the domain names in this case are not permitted to be sold to satisfy the judgment of the District of Oregon.

      B.    This Court Previously Rejected the Analogy of Domain Names to Patents

IntelliCAD also argues that domain names may be sold to enforce a judgment because they are an intangible items. Dkt. 4, 3, 5. It appears that IntelliCAD suggests that the sale and seizure of a domain name is akin to that of patents. *Id*. Relying on *Dorer*, IntelliCAD argues that like patents, domain names "have intrinsic value, are freely assignable and there is no bar, Federal or otherwise, to execution on domain names to satisfy a judgment." *Id*. This Court disagrees.

In that same case, this Court explicitly rejected this analogy – describing it as "superficially appealing" but "ultimately unsatisfactory." *Dorer v. Arel*, 60 F. Supp. 2d 558, 560 n. 9 (E.D. Va. 1999). This Court reasoned that "important distinctions between patents and domain names in

terms of their role as 'property'" make this analogy inappropriate. *Id*. This Court further explained that unlike a patent, which "confers on the patent owner the right to exclude others from making, using, or selling an invention," a domain name is "essentially an address" that "derives its value chiefly from its manner of use. . . . [Thus, it] is valueless apart from the content or goodwill to which it is attached." *Id*. This Court finds this rationale highly persuasive and rejects IntelliCAD's analogy.

### C. The All Writs Act is Inappropriate in this Case

The last argument IntelliCAD offers is that the Court should issue the writ of execution pursuant to the All Writs Act. For this argument, IntelliCAD relies on the recent Fourth Circuit case, *SAS Institute, Inc. v. World Programming Ltd.*, 952 F.3d 513 (2020). However, , application of the All Writs Act is inappropriate.

The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary and appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The All Writs Act is a "codification of the federal courts' traditional, inherent power to protect the jurisdiction they already have." *SAS Institute*, 952 F.3d at 521 (quoting *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099-1100 (11th Cir. 2004)). Without the ability to enforce their judgments, "the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." *SAS Institute*, 952 F.3d at 521 (quoting *Peacock v. Thomas*, 516 U.S. 349, 356 (1996)). The Supreme Court has noted that the All Writs Act "does not authorize [federal courts] to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate," instead, it "empowers them to fashion extraordinary remedies when the need arises[.]" *Pa. Bureau of Corrections v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985).

The circumstances in this case do not provide the need for such an extraordinary remedy. In *SAS Institute*, the Fourth Circuit found that there was a need in that case for an extraordinary remedy. 952 F.3d at 530. *SAS Institute*, however, is distinguishable. In *SAS Institute*, the judgment debtor "[i]nstead of making a good-faith effort to pay up … ha[d] repeatedly engaged in collateral attacks on the district court's judgment by calling upon the [United Kingdom's] court system." *Id.* at 521. And, as the court noted, that judgment debtor's "tactics ha[d] been successful." *Id.* In that case, the judgment debtor "paid a small fraction of the judgment, and … [was] attempting to undo even that much." *Id.* The judgment debtor did so by attacking the judgment of the American courts in the United Kingdom and obtained an injunction against the judgment creditor. *Id.* at 524. That injunction "undermined [judgment creditor's] ability to enforce the U.S. judgment" and a further United Kingdom court order "attempted to undo [judgment creditor's] limited collection success." *Id.*

This case is distinguishable. IntelliCAD argues that *SAS Institute* applies because like in that case, here "there is a U.S. judgment against a foreign company that requires enforcement." Dkt. 4, 5. But, this Court finds that IntelliCAD's reading of *SAS Institute* is too expansive. While it is true that *SAS Institute* involved a judgment against a foreign company, that fact alone does not warrant an "extraordinary remedy." In *SAS Institute*, the judgment debtor not only failed to pay the judgment in full, but also attacked the judgment in a foreign court in order to prevent the judgment creditor from being able to collect any further and to give back what it has already collected. 952 F.3d at 521. Had the district court in that case not acted pursuant to the All Writs Act, it would have looked "helpless[,]" and its judgment "would have become virtually meaningless." *Id.* at 527.

8

Gstar in this case has not attacked the judgment in a foreign court. The circumstances presented herein are not extraordinary. Just because Virginia law does not provide relief by way of garnishment against a domain name, does not make the judgment itself worthless. In *SAS Institute*, there was an injunction issued by a foreign court that prohibited the judgment creditor from attempting to enforce the judgment. Such a prohibition does not exist in this case. Furthermore, as the Fourth Circuit noted in *SAS Institute*, the district court used the All Writs Act to implement "the strongly mandated legislative policies of the [United States] and North Carolina." *Id.* at 527.

If this Court issued the writ of execution pursuant to the All Writs Act, it would undermine, not implement, the legislative policies of Virginia. Therefore, applying the All Writs Act in this case would be inappropriate.

IV. CONCLUSION

Accordingly, for the foregoing reasons IntelliCAD's Motion for a Writ of Execution (Dkt. 3) is DENIED.

It is SO ORDERED.

Alexandria, Virginia
October 29, 2020

/s/
Rossie D. Alston, Jr.
United States District Judge

9